IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **CORD HARRIS** (#2011-1230206), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14 C 10121 |
| | ) | |
| **OFFICER JOHN DOE**, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | | |
| **CORD HARRIS** (#2011-1230206), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14 C 10401 |
| | ) | |
| **OFFICER EDWARDS**, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

On February 12, 2015 frequent litigant Cord Harris ("Harris"), a prisoner in custody at the Cook County Department of Corrections ("County Jail"), filed a self-prepared document that he has captioned "Motion To Alter or Amend the Judgement [sic]" in which he seeks to revive the two above-captioned lawsuits that this Court has dismissed in a January 29 memorandum opinion and order ("Opinion"). That dismissal was based on this Court's determination that Harris' course of conduct had rendered his allegations of poverty, as reflected in his In Forma Pauperis Application ("Application") forms, untrue "[in] every real world sense" (thus triggering the dismissal under Fed. R. Civ. P. § 1915(e)(2)(A)). Because Harris (who should have known better, given his extensive experience in this District Court) did not comply with the LR 5.2(f)

dictate that requires the delivery of a copy of every court filing to the chambers of the judge assigned to the case, this Court learned of the motion only through its vetting of ECF filings, and it has had a copy printed out for its use.

Harris' motion claims to invoke Fed. R. Civ. P. ("Rule") 59(e), which is ordinarily called into play by such contentions as the need to take account of either an intervening change in controlling law or the existence of newly discovered evidence, or perhaps the need to correct a clear legal error. There are also opinions from a number of other jurisdictions (most frequently at the District Court level) that treat that Rule as a sort of catchall, but this Court's search of opinions from our Court of Appeals has uncovered none to that effect. That can be an important factor, for an improvident Rule 59(e) motion is treated as having been brought under Rule 60(b) (see, e.g., Banks v. Chicago Bd. of Educ., 750 F.3d 663, 666 (7th Cir. 2014)), in which event the filing of the motion does not toll the time for filing a notice of appeal (id.).

As for the substance of Harris' motion, he contends that his false statement "in his November 20, 2014 Application that he had not received more than $200 in funds over the preceding 12 months from any of the numerous categories listed in the Application, including the catchall category 'any other source'" (Opinion at 2), when he had in fact received $3,000 in his prison trust fund account in February 2014, was just an innocent mistake -- that he "did over look the 'catchall' question and mark the wrong box." And of course he is right in saying in his current motion (copied verbatim):

> Mr. Harris did not plan to be stabbed in the eye by some detainee here in Cook County Jail, nor did he plan for some detainee to attack him while he slept with a weapon that could have cause death.

But that attempted excuse totally ignores the fundamental truth that in forma pauperis

treatment for the 42 U.S.C. § 1983 plaintiff, whether in prison or not, is aimed at giving access to justice to people who have indeed suffered a deprivation of some constitutional right but cannot afford to pay the filing fee -- $350 or $400 -- that is the price tag for a ticket of entry to the federal courts. And that cannot be said of a person such as Harris, who essentially has no living expenses[1] and who was thus possessed of $3,000 in free funds. Nor can it be said that the prospects of future litigation were then remote or could not reasonably have been anticipated by Harris at the time that he came into possession of the $3,000 deposit to his account:

1. Before that date, in Case No. 13 C 801 assigned to this Court's calendar, Harris paid the filing fee and has been represented by retained counsel from the outset.

2. Then -- again before that date -- in Case No. 13 C 4764 (the only case in Harris' litigation string assigned to another judge, this Court's colleague Sharon Johnson Coleman), Harris sought and was granted the special type of in forma pauperis status provided to qualifying prisoner plaintiffs, and he has also been provided with pro bono counsel in that case.

3. In the next of Harris' actions that preceded his receipt of the $3,000, Case No. 13 C 5470 assigned to this Court, it also granted a then-truthful

---

[1] This is not said callously. It is certainly true that few if any members of society, given a choice, would opt for such economic freedom when it is created by a loss of personal freedom. But what has just been said in the text is still true: Society as a whole, and not the incarcerated prisoner (whether a convicted criminal or someone who in law must be held in custody as a pretrial detainee), bears the cost of the necessities of life (food, shelter, clothing and what have you).

          Application and has also provided Harris with pro bono counsel.

4.      Next -- this time after Harris' receipt of the $3,000 and his filing of the false Application -- came Case Nos. 14 C 10121 and 14 C 10401, which were the subject of the Opinion that ordered the dismissal of those cases.

5.      Since then Harris has filed two new lawsuits this year -- Case No. 15 C 821, which this Court has dismissed for the same reason as set out in the Opinion, and Case No. 15 C 1118, in which Harris has not filed any Application and this Court has not yet acted.

Despite his ongoing involvement in active litigation, it was only a short time after Harris' receipt of the $3,000 in mid-February 2014 that he set about his deliberate course of action to strip down the funds that had been made available to him by causing a regular course of third party checks to be issued to "friends" or "good friends" -- $300 in mid-March 2014, another $300 on April 14, then still another $300 on April 21, then $300 once again on May 2, then $200 on May 6 and finally another $200 on May 16 (thus $1,600 in all) -- all the while expending the rest of the money in purchases at the commissary so as to exhaust the trust fund account entirely.

What that deliberate course of conduct has displayed is a litigant who by his own acts has disabled himself from paying any of the cost that the federal justice system imposes on anyone who seeks relief through instituting litigation. Under those circumstances it simply will not do for Harris to claim justification through his decision to "help [ ] a friend from being evicted from her home, and loaned her funds until she became able to stand alone and pay back the money," as he states in the Argument portion of his current motion. That does not relieve Harris of the

obligation to play straight with the justice system, and his motion (Dkt. 12) is denied.[2]

 

_____
Milton I. Shadur
Date: February 27, 2015                Senior United States District Judge

---

[2] In the meantime, one major gap in the relevant information -- something that has never been provided to this Court -- must be filled. Harris is ordered to provide this Court on or before March 16, 2015 with information as to the nature and source of the February 4, 2014 $3,000 deposit to his account, information that may well bear on the appropriate treatment of Harris' most recent lawsuit and future lawsuits that he may choose to file.